FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 20, 2025

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| BARBARA B.,<br><br>              Plaintiff,<br><br>   v.<br><br>LELAND DUDEK,[1] Acting<br>Commissioner of Social Security,<br><br>              Defendant. | NO. 4:24-CV-5091-TOR<br><br><br>ORDER AFFIRMING<br>COMMISSIONER'S DENIAL OF<br>BENEFITS UNDER TITLE II OF<br>THE SOCIAL SECURITY ACT |

BEFORE THE COURT are the parties' briefs seeking judgment in this case. ECF Nos. 11, 15. The briefing was submitted for consideration without oral argument. The Court has reviewed the administrative record and the parties' completed briefing and is fully informed. For the reasons discussed below,

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Leland Dudek, Acting Commissioner of Social Security, is substituted as the named Defendant.

ORDER AFFIRMING COMMISSIONER'S DENIAL OF BENEFITS UNDER TITLE II OF THE SOCIAL SECURITY ACT ~ 1

Plaintiff's Opening Brief (ECF No. 11) is **DENIED** and the Commissioner's Brief is (ECF No. 15) is **GRANTED**.

**JURISDICTION**

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 405(g).

**STANDARD OF REVIEW**

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited: the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012) (citing 42 U.S.C. § 405(g)). "Substantial evidence" means relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id*. In determining whether this standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id*.

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the

ORDER AFFIRMING COMMISSIONER'S DENIAL OF BENEFITS UNDER TITLE II OF THE SOCIAL SECURITY ACT ~ 2

record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citation omitted). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Second, the claimant's impairment must be "of such severity that [he or she] is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 404.1520(a)(4)(i)–(v). At step one, the Commissioner considers the claimant's

ORDER AFFIRMING COMMISSIONER'S DENIAL OF BENEFITS UNDER TITLE II OF THE SOCIAL SECURITY ACT ~ 3

1    work activity.  20 C.F.R. § 404.1520(a)(4)(i).  If the claimant is engaged in

2    "substantial gainful activity," the Commissioner must find that the claimant is not

3    disabled.  20 C.F.R. § 404.1520(b).

4        If the claimant is not engaged in substantial gainful activities, the analysis

5    proceeds to step two.  At this step, the Commissioner considers the severity of the

6    claimant's impairment.  20 C.F.R. § 404.1520(a)(4)(ii).  If the claimant suffers

7    from "any impairment or combination of impairments which significantly limits

8    [his or her] physical or mental ability to do basic work activities," the analysis

9    proceeds to step three.  20 C.F.R. § 404.1520(c).  If the claimant's impairment

10    does not satisfy this severity threshold, however, the Commissioner must find that

11    the claimant is not disabled.  *Id.*

12        At step three, the Commissioner compares the claimant's impairment to

13    several impairments recognized by the Commissioner to be so severe as to

14    preclude a person from engaging in substantial gainful activity.  20 C.F.R. §

15    404.1520(a)(4)(iii).  If the impairment is as severe, or more severe than one of the

16    enumerated impairments, the Commissioner must find the claimant disabled and

17    award benefits.  20 C.F.R. § 404.1520(d).

18        If the severity of the claimant's impairment does meet or exceed the severity

19    of the enumerated impairments, the Commissioner must pause to assess the

20    claimant's "residual functional capacity."  Residual functional capacity ("RFC"),

ORDER AFFIRMING COMMISSIONER'S DENIAL OF BENEFITS UNDER
TITLE II OF THE SOCIAL SECURITY ACT ~ 4

1    defined generally as the claimant's ability to perform physical and mental work

2    activities on a sustained basis despite his or her limitations (20 C.F.R. §

3    404.1545(a)(1)), is relevant to both the fourth and fifth steps of the analysis.

4            At step four, the Commissioner considers whether, in view of the claimant's

5    RFC, the claimant is capable of performing work that he or she has performed in

6    the past ("past relevant work").  20 C.F.R. § 404.1520(a)(4)(iv).  If the claimant is

7    capable of performing past relevant work, the Commissioner must find that the

8    claimant is not disabled.  20 C.F.R. § 404.1520(f).  If the claimant is incapable of

9    performing such work, the analysis proceeds to step five.

10           At step five, the Commissioner considers whether, in view of the claimant's

11   RFC, the claimant is capable of performing other work in the national economy.

12   20 C.F.R. § 404.1520(a)(4)(v).  In making this determination, the Commissioner

13   must also consider vocational factors such as the claimant's age, education and

14   work experience.  *Id.*  If the claimant is capable of adjusting to other work, the

15   Commissioner must find that the claimant is not disabled.  20 C.F.R. §

16   404.1520(g)(1).  If the claimant is not capable of adjusting to other work, the

17   analysis concludes with a finding that the claimant is disabled and is therefore

18   entitled to benefits.  *Id.*

19           The claimant bears the burden of proof at steps one through four above.

20   *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009).  If the

analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.1560(c); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

Plaintiff first applied for a period of disability insurance benefits on November 6, 2019, alleging disability beginning August 1, 2008. Tr. 22. The claim was denied initially on March 23, 2020, and upon reconsideration on July 20, 2020. *Id.* Plaintiff requested a hearing. *Id.* A telephonic hearing was held before an administrative law judge ("ALJ") on September 15, 2021. *Id.* On October 6, 2021, the ALJ denied Plaintiff's claim. Tr. 31. The Appeals Council denied review on September 21, 2022. Tr. 1.

Plaintiff appealed the ALJ's decision to this Court. Tr. 1334. The Court remanded the matter to the Social Security Administration for further proceedings on March 13, 2023. Tr. 1342. Plaintiff appeared at a subsequent telephonic hearing on April 18, 2024. Tr. 1274. The ALJ again denied Plaintiff's claim on May 30, 2024. Tr. 1284. The ALJ's decision became the final decision and is subject to judicial review. 20 C.F.R. § 404.981.

As a threshold matter, the ALJ found Plaintiff met the insured status requirements of the Social Security Act through December 31, 2013. Tr. 1277. At

step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity from August 1, 2008, the alleged onset date, through the date of last insured of December 31, 2013. *Id.* At step two, the ALJ found that Plaintiff had the following severe impairments: fibromyalgia, degenerative disc disease of the cervical spine, and migraines. *Id.* At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. Tr. 1278. The ALJ then determined Plaintiff had the residual functional capacity to perform the full range of light work except as follows:

> [C]laimant would also need to avoid concentrated exposure to respiratory irritants and have no more than moderate exposure to heavy industrial noise, heavy industrial vibration, and very bright lights, with "very bright" defined as being brighter than standard fluorescent office lights.

Tr. 1279.

At step four, the ALJ found Plaintiff could not perform past relevant work. Tr. 1285. At step five, the ALJ sought testimony from a vocational expert on available jobs in the national economy. The vocational expert testified that an individual with Plaintiff's RFC, age, and background would be able to perform the requirements of the following representative light work occupations that exist in significant numbers in the national economy: Storage Rental Clerk, with 58,000 jobs in the national economy; Marker, with 163,000 jobs in the national economy;

ORDER AFFIRMING COMMISSIONER'S DENIAL OF BENEFITS UNDER TITLE II OF THE SOCIAL SECURITY ACT ~ 7

and Lab Sample Carrier, with 11,000 jobs in the national economy. Tr. 1286. The vocational expert noted that the provided hypothetical limitations are not specifically discussed in the Dictionary of Occupational Titles ("DOT"); therefore, the basis for his knowledge that the provided jobs would fit the hypothetical limitations was based on his own education, training, and experience. *Id.* Accordingly, the ALJ determined that Plaintiff had not been under a disability from August 1, 2008 through December 31, 2013. Tr. 1287.

## ISSUES

Plaintiff seeks judicial review of the ALJ's final decision denying his disability insurance benefits under Title II of the Social Security Act. Plaintiff raises the following issues:

1. Whether the ALJ conducted an adequate analysis at step three;

2. Whether the ALJ properly considered Plaintiff's subjective symptom testimony; and

3. Whether the ALJ conducted an adequate analysis at step five.

ECF No. 11 at 5.

//

//

//

//

ORDER AFFIRMING COMMISSIONER'S DENIAL OF BENEFITS UNDER TITLE II OF THE SOCIAL SECURITY ACT ~ 8

1

**DISCUSSION**

2

**A. Step Three Analysis**

3    Plaintiff argues the ALJ failed to adequately develop the record and find

4 Plaintiff's severe impairments, her migraine headaches and fibromyalgia, equaled

5 the severity of a listed impairment.  ECF No. 11 at 7.

6    *1. Migraine Headaches*

7    Plaintiff argues the ALJ's conclusory statement, "in this case the

8 undersigned finds there is no evidence that the claimant's primary headache

9 disorder medically equals a listing, either individually or in combination with

10 another impairment," was an improper boilerplate conclusion and clear legal error.

11 *Id.* at 7-8.  Plaintiff asserts that the ALJ did not properly consider Listing 11.02/BD

12 and Social Security Rule ("SSR") 19-4p in her decision and was also required to

13 elicit medical expert testimony to assess whether Plaintiff's migraine frequency

14 equaled Listing 11.02B.  *Id.* at 9.  Finally, Plaintiff argues the ALJ did not consider

15 the frequency of Plaintiff's headaches, both from the record and her hearing

16 testimony.  *Id.* 9-11.

17    Defendant counters that the ALJ's decision outlines that she considered both

18 the SSR and applicable listing and addressed the frequency of Plaintiff's

19 headaches.  Defendant also argues Plaintiff failed to meet her burden in

20 demonstrating how her headaches equaled Listing 11.02.  ECF No. 15 at 4-5.

1    The ALJ decision correctly notes that there are no listing criteria for

2  headaches.  Tr. 1278.  However, per SSR 19-4p, the most analogous listed

3  impairment for a medically determinable impairment ("MDI") of a primary

4  headache disorder is epilepsy, Listing 11.02/BD.  An ALJ may find a claimants

5  MDI medically equals an 11.02 Listing where they exhibit equivalent signs and

6  limitations.

> Paragraph B of listing 11.02 requires dyscognitive seizures occurring at least once a week for at least 3 consecutive months despite adherence to prescribed treatment. To evaluate whether a primary headache disorder is equal in severity and duration to the criteria in 11.02B, we consider: A detailed description from an AMS [Acceptable Medical Source] of a typical headache event, including all associated phenomena (for example, premonitory symptoms, aura, duration, intensity, and accompanying symptoms); the frequency of headache events; adherence to prescribed treatment; side effects of treatment (for example, many medications used for treating a primary headache disorder can produce drowsiness, confusion, or inattention); and limitations in functioning that may be associated with the primary headache disorder or effects of its treatment, such as interference with activity during the day (for example, the need for a darkened and quiet room, having to lie down without moving, a sleep disturbance that affects daytime activities, or other related needs and limitations).

> Paragraph D of listing 11.02 requires dyscognitive seizures occurring at least once every 2 weeks for at least 3 consecutive months despite adherence to prescribed treatment, and marked limitation in one area of functioning. To evaluate whether a primary headache disorder is equal in severity and duration to the criteria in 11.02D, we consider the same factors we consider for 11.02B and we also consider whether the overall effects of the primary headache disorder on functioning results in marked limitation in: Physical functioning; understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing oneself.

ORDER AFFIRMING COMMISSIONER'S DENIAL OF BENEFITS UNDER TITLE II OF THE SOCIAL SECURITY ACT ~ 10

SSR 19-4p.

Plaintiff argues SSR 19-4p requires an ALJ to call up on a medical expert to provide an assessment of whether a claimant's primary headache disorder is equal in severity and duration to the criteria in 11.02B. ECF No. 11 at 9. The Court disagrees. The Court has not located any case law examples where a court required an ALJ to seek a medical expert for the specific purpose of providing an assessment of whether a claimant's primary headache disorder equaled a 11.02B Listing. Rather, the Court interprets SSR 19-4p to mean an ALJ will consider evidence from the medical record or a provided medical opinion that comes from an AMS. *See Jamie Marie V. v. O'Malley*, No. 1:23-CV-03047-LRS, 2024 WL 4063557, at *10 (E.D. Wash. Sept. 5, 2024) ("Plaintiff does not appear to dispute the ALJ's determination that the record does not contain a detailed description of a headache event from a provider who has observed at least one such event. As such, the Court finds no basis to remand for an award of benefits based on Listing 11.02."). The ALJ did not commit legal error on this basis.

The Court now turns to Plaintiff's argument that the ALJ improperly gave a boilerplate statement that Plaintiff's primary headache disorder did not equal Listing 11.02. The Ninth Circuit has continued to apply its precedent that "[a] boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not [meet or equal a listed impairment]." *Valladares v. Kijakazi*,

No. 21-35379, 2022 WL 1262012, at *1 (9th Cir. Apr. 28, 2022) (quoting *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001)).  However, the Ninth Circuit has also held the ALJ need only make an "adequate statement of the 'foundations on which the ultimate factual conclusions are based.'"  *Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990).  Additionally, at least one other district court within this circuit has found that a boilerplate conclusion may be appropriate where the claimant failed to put forth any evidence from which an ALJ could conclude that an impairment met or equaled a listing.  *See, e.g.*, *Lara v. Colvin*, No. CV-13-01643-PHX-JZB, 2015 WL 1505817, at *4 (D. Ariz. Mar. 31, 2015); *Fields v. Astrue*, No. EDCV 09-7177 CW, 2010 WL 3895534, at *7 (C.D. Cal. Oct. 4, 2010) ("Unless Plaintiff presents evidence of an equivalence . . . the ALJ was not required to explain his finding and discuss the combined effects of the impairments.").

Here, the ALJ pointed to the listing criteria of Listing 11.02 as being most analogous to the listed impairment of an MDI of a primary headache disorder and described the criteria an ALJ must evaluate in assessing whether the impairment was medically equivalent.  Tr. 1278-1279.  The ALJ described the medical evidence to be considered and concluded there was no evidence that Plaintiff's primary headache disorder medically equaled a listing.  Tr. 1279.  The Court finds the ALJ's conclusion at step three is substantially supported by the lack of

evidence in the record and the ALJ's discussion of Plaintiff's migraines in the decision as a whole.

Plaintiff points to medical records that she argues support a finding that Plaintiff's impairment was medically equivalent to Listing 11.02, however, all but one are from migraine events that occurred before the August 1, 2008 alleged onset date. ECF No. 11 at 9-11; Tr. 1134-1171, 1126. The medical record dated after the onset date describes Plaintiff seeking care on September 3, 2008 for a migraine event. Tr. 1126. At that time, Plaintiff described having daily headaches that "are not that bad" but was having "migraines more frequently and they seem worse." *Id.* She described her usual course of treatment in alleviating migraines on her own, including using Zomig when the headaches "are very bad," and explained that she had been using Zomig more often at that time from the stress of moving and needing to find a job. *Id.* This medical record does not adequately address the criteria laid out in Listing 11.02B or D. Moreover, the stress of relocating was a contributing factor to Plaintiff's migraine event which the ALJ discussed as a main factor in triggering other reported migraine events per Plaintiff's own statements to her providers. *Id.*; Tr. 1282.

Plaintiff also points to her discussion of her migraines during her hearing testimony as evidence supporting an equivalency finding, but as Defendant correctly notes, the hearing testimony is not an AMS the ALJ may consider per SS

ORDER AFFIRMING COMMISSIONER'S DENIAL OF BENEFITS UNDER TITLE II OF THE SOCIAL SECURITY ACT ~ 13

1    19-4p.  Thus, the ALJ also did not need to address Plaintiff's hearing testimony as

2    to the frequency of her headaches in the step three analysis.  Plaintiff does not

3    reference any other relevant evidence from the record that supports a finding that

4    Plaintiff's primary headache disorder was medically equivalent to Listing 11.02B.

5    The Court finds the ALJ's conclusory statement that there was no evidence that

6    Plaintiff's primary headache disorder was medically equivalent to 11.02 was

7    substantially supported.

8        *2. Fibromyalgia*

9        Plaintiff next argues the ALJ failed to adequately evaluate Listing 14.09D in

10    accordance with SSR 12-2p with regard to Plaintiff's fibromyalgia.  ECF No. 11 at

11    11.  Plaintiff cites to four different records documenting issues related to Plaintiff's

12    fibromyalgia that she argues supports a finding of medical equivalency to Listing

13    14.09D.  The first is imaging of Plaintiff's cervical spine taken on August 3, 2009

14    showing a "[d]isc bulge at the C5-6 level with effacement of the cord causing

15    moderately severe central canal stenosis and bilateral foraminal narrowing left

16    much greater than right" and "[a] left posterolateral disk bulge/osteophyte complex

17    effacing the left side of the cord with moderate central canal stenosis, but the nerve

18    roots appear to exit successfully."  Tr. 841.  The remaining three records come

19    from three separate visits Plaintiff made to Vista Pain Center Inc. in 2013 with

20    each visit reporting Plaintiff showed more than 11 out of 18 fibromyalgia tender

1   points.  ECF No. 11 at 11-12.  Plaintiff argues that these records in conjunction

2   with her hearing testimony support a finding that Plaintiff's fibromyalgia

3   impairment equals the requirements of Listing 14.09D.  *Id.* at 12.  Defendant

4   argues the ALJ adequately addressed the SSR and applicable listing and Plaintiff's

5   references to the record easily fall short of demonstrating Plaintiff's fibromyalgia

6   meet the criteria of Listing 14.09D.  ECF No. 15 at 6-7.  The Court agrees.

7       SSR 12-2p states that fibromyalgia is not a listed impairment but may

8   medically equal a listing such as listing 14.09D in the listing for inflammatory

9   arthritis.  SSR 19-2p.  "[F]or a claimant to qualify for benefits by showing that

10   [her] unlisted impairment, or combination of impairments, is medically equivalent

11   to a listed impairment, [s]he must present medical findings equal in severity to *all*

12   the criteria for the one most similar listed impairment."  *Sullivan v. Zebley*, 493

13   U.S. 521, 531 (1990) (emphasis in original).  Listing 14.09D requires as follows:

> D. Repeated manifestations of inflammatory arthritis, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level:
>
> 1. Limitation of activities of daily living.
>
> 2. Limitation in maintaining social functioning.
>
> 3. Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.
>
> In this case, the ALJ made the following assessment:

ORDER AFFIRMING COMMISSIONER'S DENIAL OF BENEFITS UNDER TITLE II OF THE SOCIAL SECURITY ACT ~ 15

1
2
3
4
5

> In accordance with Social Security Ruling 12-2p, the undersigned has considered fibromyalgia at each step of the sequential evaluation process. The functional limitations resulting from claimant's fibromyalgia were given consideration when determining whether any listings, including listing 14.09(D) are met. In this case, the claimant's fibromyalgia does not cause restrictions that medically equal a listing either alone or in combination with at least one other medically determinable impairment.

6

Tr. 1278.

7

    The ALJ accounted for the records Plaintiff cites to later in her decision.

8

The ALJ noted the imaging of Plaintiff's cervical spine in August 2009 revealed a

9

disc bulge at C5-6 with effacement of the cord "causing a moderately severe

10

central canal stenosis and bilateral foraminal narrowing, along with a left

11

posterolateral disk bulge and osteophyte complex effacing the left." Tr. 1281. The

12

ALJ also acknowledged the three physical exams of Plaintiff in 2013 that noted she

13

was positive for 11 out of 18 fibromyalgia tender points. *Id.* However, the ALJ

14

concluded other evidence from the record suggested Plaintiff's functionality was

15

not as limited as she alleged. *Id.* The ALJ cited to the record showing that several

16

physical exams from 2013 revealed no scoliosis, kyphosis or lordosis despite the

17

disc bulge in Plaintiff's cervical spine. *Id.* The ALJ also cited to the same records

18

reporting the 11 out of 18 fibromyalgia tender points as also showing Plaintiff had

19

normal muscle strength and tone and ranges of motion within functional limitations

20

for all her major joints at that time. *Id.*

ORDER AFFIRMING COMMISSIONER'S DENIAL OF BENEFITS UNDER TITLE II OF THE SOCIAL SECURITY ACT ~ 16

Plaintiff argues that consideration of the fibromyalgia flares in conjunction with her cervical degenerative disc disease and migraines meets the criteria of Listing 14.09D and 11.02D because they together result in a marked limitation in activities of daily living and persistence and pace.  ECF No. 11 at 12.  However, Plaintiff's referenced marked limitation—she must lie down during the day and limit activities involving the use of hands to five-minute increments followed by 30 minutes of rest—again comes from her hearing testimony.  *Id.*  As the Court previously explained, an ALJ may only consider medical evidence in making an equivalency finding.  *Kennedy v. Colvin*, 738 F.3d 1172, 1177 (9th Cir. 2013) ("[E]quivalence is considered 'based on medical evidence only' . . . .") (quoting *Brouse v. Chater*, 161 F.3d 11, 1998 WL 567964, at *2 (9th Cir. Aug. 25, 1998) (unpublished)).

Reviewing the ALJ's decision as a whole, the Court finds the ALJ's substantially supported her step three analysis with evidence from the record.

**B. Plaintiff's Subjective Symptom Testimony**

Plaintiff argues the ALJ improperly rejected Plaintiff's subjective complaints.  ECF No. 11 at 13.  Specifically, Plaintiff asserts that the ALJ erred by failing to provide clear and convincing reasons for making a negative credibility finding.  *Id.* at 14.

ORDER AFFIRMING COMMISSIONER'S DENIAL OF BENEFITS UNDER TITLE II OF THE SOCIAL SECURITY ACT ~ 17

In social security proceedings, a claimant must prove the existence of a physical or mental impairment with "medical evidence consisting of signs, symptoms, and laboratory findings." 20 C.F.R. §§ 404.1508, 404.1527. A claimant's statements about his or her symptoms alone will not suffice. 20 C.F.R. §§ 404.1508, 404.1527. Once an impairment has been proven to exist, an ALJ "may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (en banc). As long as the impairment "could reasonably be expected to produce [the] symptoms," the claimant may offer a subjective evaluation as to the severity of the impairment. *Id.* at 345. This rule recognizes that the severity of a claimant's symptoms "cannot be objectively verified or measured." *Id.* at 347 (quotation and citation omitted).

However, an ALJ may conclude that the claimant's subjective assessment is unreliable, so long as the ALJ makes "a credibility determination with findings sufficiently specific to permit [a reviewing] court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002); *see also Bunnell*, 947 F.2d at 345 ("[A]lthough an adjudicator may find the claimant's allegations of severity to be not credible, the adjudicator must specifically make findings which support this conclusion."). If there is no evidence of malingering, the ALJ's reasons for discrediting the claimant's

testimony must be "specific, clear and convincing." *Chaudhry v. Astrue*, 688 F.3d 661, 671-72 (9th Cir. 2012) (quotation and citation omitted). That is, the ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan*, 246 F.3d at 1208.

Here, although the ALJ found that the medical evidence confirmed the existence of medically determinable impairments, the ALJ declined to credit Plaintiff's testimony about the intensity, persistence, and limiting effects of her symptoms. Tr. 1281. Because there is no evidence of malingering in this case, the Court must determine whether the ALJ provided specific, clear and convincing reasons not to credit Plaintiff's testimony as to the limiting effects of her symptoms. *Chaudhry*, 688 F.3d at 672.

SSR 12-2p explains the symptom evaluation process for fibromyalgia.

Once an MDI is established, we then evaluate the intensity and persistence of the person's pain or any other symptoms and determine the extent to which the symptoms limit the person's capacity for work. If objective medical evidence does not substantiate the person's statements about the intensity, persistence, and functionally limiting effects of symptoms, we consider all of the evidence in the case record, including the person's daily activities, medications or other treatments the person uses, or has used, to alleviate symptoms; the nature and frequency of the person's attempts to obtain medical treatment for symptoms; and statements by other people about the person's symptoms. As we explain in SSR 96-7p, we will make a finding about the credibility of the person's statements regarding the effects of his or her symptoms on functioning. We will make every reasonable effort to

ORDER AFFIRMING COMMISSIONER'S DENIAL OF BENEFITS UNDER TITLE II OF THE SOCIAL SECURITY ACT ~ 19

obtain available information that could help us assess the credibility of the person's statements.

SSR 12-2p.

As an initial matter, the ALJ found that despite the imaging showing a disc bulge in Plaintiff's cervical spine in 2009, her physical exams in 2013 revealed no scoliosis, kyphosis or lordosis, and that she had normal muscle strength and tone and ranges of motion within functional limits for all her major joints. Tr. 1281. The ALJ also found that overall, the course of treatment to address both Plaintiff's migraines and fibromyalgia was more conservative in that Plaintiff received no greater treatment than continued recommendations to use current medications, refill prescriptions, exercise, and follow up with providers. *Id.* In support, the ALJ cites to several medical records from 2013 laying out such treatment plans, even where three reported Plaintiff as being positive for more than 11 out of 18 tender points. Tr. 119, 122, 128. *See Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2009) ("[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment.").

The ALJ also found that Plaintiff's continued treatment of her cervical pain, migraines, and fibromyalgia through medication management after her date last insured let to a 90% improvement in her pain symptoms and general daily activity. Tr. 1281. Indeed, Plaintiff reported to her provider on twelve separate occasions

ORDER AFFIRMING COMMISSIONER'S DENIAL OF BENEFITS UNDER TITLE II OF THE SOCIAL SECURITY ACT ~ 20

between March 7, 2017 and August 31, 2018 that she experienced an 80-90% improvement in her pain symptoms and general daily activity on her current pain regimen. Tr. 265-314. The ALJ found this continued course of conservative treatment suggests improvement to Plaintiff's fibromyalgia pain with medication management despite Plaintiff's testimony of continued debilitating symptoms that have not improved with medication. Tr. 1281. Additionally, the ALJ also found that while Duloxetine was available to Plaintiff when she was diagnosed with fibromyalgia in 2013, her providers did not feel the need to prescribe it to her until after 2013 which suggested Plaintiff's fibromyalgia symptoms in 2013 were not as severe as she alleges. Tr. 1282.

As for Plaintiff's migraines, the ALJ found Plaintiff's testimony that medication did not help inconsistent with the record that revealed multiple statements by Plaintiff to her providers that medications such as Propranolol, Zofran, Percocet, and Zomig provided significant relief. *Id.* The ALJ also noted with citations to the record that some of Plaintiff's more severe migraine episodes that led to emergency room visits, several that occurred before the onset date, were induced both by stressful events such as relocating and a lack of access to her medications. *Id.* This evidence contradicts Plaintiff's hearing testimony that most of her medications did nothing to help her and that there were no triggers for her migraines. Tr. 1299-1300. The ALJ further discredited Plaintiff's testimony that

ORDER AFFIRMING COMMISSIONER'S DENIAL OF BENEFITS UNDER TITLE II OF THE SOCIAL SECURITY ACT ~ 21

1   she stopped taking the medications due to them not helping by citing to multiple

2   points in the record indicating she regularly received refills of her medications.  Tr.

3   1282.

4        Plaintiff asserts that the ALJ improperly faulted Plaintiff for her

5   discontinued emergency room visits after she lost her health insurance in 2008 and

6   falsely accused Plaintiff of not taking her medications but does not provide any

7   citation to where this actually occurred.  ECF No. 11 at 16.  In fact, the ALJ found

8   the opposite and explained the record indicated Plaintiff did not discontinue using

9   her medications despite saying she did during her hearing testimony.  Tr. 1282.

10       The Court also rejects Plaintiff's argument that the ALJ improperly

11  discounted Plaintiff's subjective complaints due to a lack of supporting objective

12  evidence.  ECF No. 11 at 15-16.  The ALJ discounted Plaintiff's subjective

13  symptom testimony due to the numerous inconsistencies and contradictions in the

14  record.

15       Finally, Plaintiff contends the ALJ erred in rejecting Plaintiff's disabling

16  allegations based on her daily activities.  ECF No. 11 at 18.  In assessing a

17  claimant's credibility, an ALJ may also consider "whether the claimant engages in

18  daily activities inconsistent with the alleged symptoms."  *Lingenfelter v. Astrue*,

19  504 F.3d 1028, 1040 (9th Cir. 2007).  Here, the ALJ found Plaintiff's statements at

20  her hearing testimony regarding her limitations in being able to complete chores or

ORDER AFFIRMING COMMISSIONER'S DENIAL OF BENEFITS UNDER
TITLE II OF THE SOCIAL SECURITY ACT ~ 22

partake in hobbies due to her fibromyalgia and related symptoms was contradicted by her own function report.  Tr. 1283.  Plaintiff completed a function report February 26, 2020 and indicated she did not have any problems with personal care, cooked meals once or twice a week, completed household chores, and left the house once a week to shop for around an hour.  Tr. 206-208.  She also reported that she was not able to see family as much as she would like and only spoke with them on the phone every three months, however, she reported that this was due to too many "Dr. Bills."  Tr. 209.

The ALJ also noted that the evidence indicated Plaintiff had been suffering from migraines years prior to the alleged onset date but continued to work as a bus driver and care for her elderly mother.  Tr. 1281.  Finally, the ALJ noted that although Plaintiff alleged her fibromyalgia limited her ability in completing activities of daily living due to the pain, the record showed Plaintiff began a pain and fibromyalgia regimen in June 2013 onwards which she later reported starting in 2017 as providing significant relief.  Tr. 1283.  The ALJ goes on to explain that even if Plaintiff's symptoms were debilitating in those first six months of 2013, it would fail the meet the 12-month durational requirement for a finding of disability under 20 C.F.R. § 404.1509.  *Id.*

The Court notes that many of the treatment notes from the same provider indicated fluctuations in pain and daily function prior to the 2017 report first

showing Plaintiff had significant improvement in her symptoms.  Tr. 383, 364, 360, 350.  However, her pain control remained consistent throughout that timeframe and Plaintiff often rated her pain with medication on a 1-10 scale as at a 2 or 3 versus 9 or 10 when without medication which supports the ALJ's finding that Plaintiff's symptoms improved with treatment.  *See, e.g.*, Tr. 337, 343, 346, 348, 361.

Plaintiff argues the ALJ failed to take into consideration Plaintiff's coping mechanisms other than through professional care such as lying down in a dark quiet room when suffering from migraines or laying down for two to three hours per week when Plaintiff suffered from fibromyalgia flares and needing to take breaks involving her hands after five minutes of use.  ECF No. 11 at 19.  The Court disagrees and finds the ALJ properly considered Plaintiff's subjective symptom testimony and substantially supported her conclusion that they were inconsistent with the record.  The Court also notes that the ALJ properly accounted for Plaintiff's migraines and related symptoms and tendency to be triggered by stress and bright lights in the RFC.

## C. Step Five Analysis

Plaintiff contends the ALJ erred in the step five analysis by relying on the vocational expert's response to an incomplete hypothetical.  ECF No. 11 at 20.  Plaintiff argues that the hypothetical should have contained the improperly rejected

ORDER AFFIRMING COMMISSIONER'S DENIAL OF BENEFITS UNDER TITLE II OF THE SOCIAL SECURITY ACT ~ 24

limitations, that is Plaintiff's need to work in a very dark area without outside light, the need to take two-hour unscheduled breaks occurring at least weekly, and the ability to be absent for at least once a month. *Id.* at 20-21. As previously discussed, the Court does not find the ALJ erred in her RFC assessment, therefore, the hypothetical presented to the vocational expert was proper.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiff's Opening Brief, ECF No. 11, is **DENIED**.

2. The Commissioner's Brief, ECF No. 15, is **GRANTED**.

3. The District Court Executive is directed to update the docket sheet to reflect the substitution of Leland Dudek as Defendant.

The District Court Executive is directed to enter this Order, enter judgment accordingly, and furnish copies to counsel, and **close the file**.

DATED March 20, 2025.



THOMAS O. RICE
United States District Judge

ORDER AFFIRMING COMMISSIONER'S DENIAL OF BENEFITS UNDER TITLE II OF THE SOCIAL SECURITY ACT ~ 25